1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
9                       AT TACOMA

10
WILLIAM F. HOSEL,
11                                              CASE NO.    C04-5537RJB
                Plaintiff,
12                                              REPORT AND
    v.                                          RECOMMENDATION
13
JO ANNE B. BARNHART, Commissioner of           Noted for September 23, 2005
14 Social Security,

15              Defendant.

16

17

18          Plaintiff, William F. Hosel, has brought this matter for judicial review of the denial of his application

19 for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned

20 Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as

21 authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties'

22 briefs and the remaining record, the undersigned submits the following report and recommendation for the

23 Honorable Robert J. Bryan's review.

24                          FACTUAL AND PROCEDURAL HISTORY

25          Plaintiff currently is fifty-one years old.[1] Tr. 18.  He completed the ninth grade and received a

26 general equivalency diploma. Tr. 53.  He has past work experience as a general laborer. Tr. 12, 48, 56.

27

28          [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access
    to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

1    Plaintiff filed an application for SSI benefits on April 17, 2003, alleging disability as of January 1,

2  2003, due to back pain, degenerative disc disease and a shoulder injury. Tr. 12, 31, 47.  His application was

3  denied initially and on reconsideration. Tr. 18-20, 25.  Although plaintiff submitted a request for a hearing

4  by an administrative law judge ("ALJ"), he elected not to appear at that hearing, instead requesting that a

5  decision be made based on the evidence in his case. Tr. 11, 27.

6    On March 27, 2004, the ALJ issued a decision in which he determined plaintiff to be not disabled,

7  finding in relevant part as follows:

8       (1)    at step one of the disability evaluation process, plaintiff had not engaged in
                substantial gainful activity since his alleged onset date of disability;
9
10      (2)    at step two, plaintiff had "severe" impairments consisting of degenerative disc
                disease;

11      (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of
                those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
12
13      (4)    at step four, plaintiff had the residual functional capacity to perform essentially a
                full range of light work, which precluded him from performing his past relevant
                work; and
14
15      (5)    at step five, plaintiff was capable of performing other jobs existing in significant
                numbers in the national economy.

16  Tr. 16-17.  Plaintiff's request for review was denied by the Appeals Council on July 6, 2004, making the

17  ALJ's decision the Commissioner's final decision. Tr. 3; 20 C.F.R. § 416.1481.

18    On August 27, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision.

19  (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of SSI

20  benefits, or in the alternative for further administrative proceedings, for the following reasons:

21      (a)    the ALJ erred in failing to fully and fairly develop the record;

22      (b)    the ALJ erred in assessing plaintiff's credibility; and

23      (c)    the ALJ erred in assessing plaintiff's residual functional capacity.

24  For the reasons set forth below, however, the undersigned finds the ALJ properly determined plaintiff to be

25  not disabled, and recommends the ALJ's decision be affirmed.

26                                        DISCUSSION

27    This court must uphold the Commissioner's determination that plaintiff is not disabled if the

28  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

REPORT AND RECOMMENDATION
Page - 2

1   support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

2   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson

3   v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

4   a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

5   1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

6   one rational interpretation, the court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d

7   577, 579 (9th Cir. 1984).

8   I.      The ALJ Did Not Fail to Fully and Fairly Develop the Record

9          The ALJ has the "duty to fully and fairly develop the record and to assure that the claimant's

10  interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).

11  When a claimant is unrepresented, furthermore, "the ALJ must be especially diligent in exploring for all the

12  relevant facts." Id.  However, it is only where the record contains "[a]mbiguous evidence" or the ALJ has

13  found "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to

14  "conduct an appropriate inquiry" is triggered. Id. (citations omitted).

15         Plaintiff appears to first argue that the ALJ erred in finding that he "elected to have a decision made

16  on the evidence in the record without an oral hearing" and "to proceed without a representative," and that

17  he "was fully apprised of the right to representation." Tr. 11.  The undersigned disagrees.  On October 20,

18  2003, plaintiff completed a "Request for Hearing by Administrative Law Judge" form, checking the "no"

19  box in response to the statement that "I have additional evidence to submit." Tr. 27.  On that same form, he

20  also checked a box which stated that "I do not wish to appear at a hearing and I request that a decision be

21  made based on the evidence in my case." Id.

22         In a letter to plaintiff dated November 3, 2003, the ALJ wrote in relevant part as follows:

23         In reviewing your file, I noted that you waived your right to appear and give evidence,
           and you requested that a decision be made based on the evidence of record.

24
           If this is still your intention please complete the enclosed Waiver of Your Right to
25         Personal Appearance before an Administrative Law Judge form (HA-4608).  Please
           return the form to me in the self-addressed postage free return envelope.
26
    Tr. 28.  Enclosed with the ALJ's letter was a copy of the form HA-46008 titled "Waiver of Your Right to
27
    Personal Appearance Before an Administrative Law Judge." Tr. 29.  That form reads in relevant part:
28
           •      I have been advised of my right to appear in person before an Administrative

REPORT AND RECOMMENDATION
Page - 3

1
2
3
    Law Judge.  I understand that my personal appearance before an Administrative
Law Judge would provide me with the opportunity to present written evidence,
my testimony, and the testimony of other witnesses.  I understand that this
opportunity to be seen and heard could be helpful to the Administrative Law
Judge in making a decision.

4
5
•  Although my right to a personal appearance before an Administrative Law Judge
has been explained to me, I do not want to appear in person.  I want to have my
case decided on the written evidence. . . .

6
7
•  I understand that I have a right to be represented and that if I need
representation, the Social Security office or hearing office can give me a list of
legal referral and service organizations to assist me in locating a representative.

8 Id.

9  Plaintiff apparently is claiming that he was not apprised of his right to representation and did not

10 agree to proceed with the hearing without such representation, because the ALJ's letter contained no such

11 apprisal of his right to representation.  Plaintiff further claims that while the enclosed copy of the waiver

12 form did advise him of that right, the record does not include a copy of that form signed by him.  While it is

13 true the record does not contained any such signed form, plaintiff does not argue that he never received it.

14 In addition, although it is not clear whether plaintiff actually signed and returned the form, or if he did not

15 do so, why the issue was not pursued further by the ALJ, plaintiff has not demonstrated on the basis of this

16 record that he was unaware of his right to proceed with legal representation.[2]

17 Plaintiff next argues the ALJ further failed in his duty to fully and fairly develop the record by not

18 obtaining from his treating physician, Dr. Mark S. Redlin, an update of medical information for the period

19 of time between the date of the most recent medical evidence in the record, July 11, 2003 (Tr. 108), and the

20 date the ALJ issued his decision, March 27, 2004 (Tr. 17).  In support of this contention, plaintiff points to

21 the information he provided to the Social Security Administration when he filled out a request for hearing

22 form.  On that form, in answer to the question of whether he had been treated or examined by a physician

23 since the date his request for reconsideration of the Social Security Administration's initial determination

24 was filed, July 16, 2003, plaintiff indicated he had seen Dr. Redlin. Tr. 97.

25 That form also contains spaces for responding to the following statements: "[h]ow often do you see

26 this physician" and "[d]ates you saw this physician." Id.  With respect to how often he saw Dr. Redlin,

27

28   [2]Indeed, of particular note is the fact that plaintiff argues not that he did not ever receive the waiver form, but rather that
the record does not contain a signed copy of that form.

REPORT AND RECOMMENDATION
Page - 4

1   plaintiff wrote "once every three months." Id.  With respect to the second statement, however, plaintiff left

2   that space blank. Id.  Plaintiff also wrote that the reason for his visits to Dr. Redlin was "update on my back

3   problem." Id.  Thus, while plaintiff indicated that he saw Dr. Redlin once every three months for his back

4   problems after he filed his request for reconsideration, he provided no specific dates with respect thereto.

5   As such, it was not unreasonable for the ALJ to assume that there was no more pertinent medical evdence

6   to be obtained from Dr. Redlin. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ responsible

7   for determining credibility and resolving ambiguities and conflicts medical evidence).

8        In addition, as noted above, the ALJ's duty to conduct a further inquiry into the facts of plaintiff's

9   case is only triggered where the record contains "[a]mbiguous evidence" or the ALJ has found "the record

10  is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150.  The medical

11  evidence in the record regarding plaintiff's impairments is not ambiguous, however, indicating that they are

12  not as significant as alleged.  For example, while Dr. Redlin diagnosed plaintiff with chronic low back pain

13  symptoms, he found only moderate disc disease, with no radiculopathy. Tr. 115, 130-35.  Although in late

14  April 2003, Dr. Redlin did not believe plaintiff was able to work at that time due to an "acute flare of his

15  back," he stated that plaintiff should be "reassessed in about 3 months," and that it was "reasonable for him

16  to investigate work opportunities" in the meantime. Tr. 112.

17       Other evidence in the record also unambiguously shows that plaintiff's physical impairments are far

18  from disabling.  Plaintiff underwent a neurological examination of his back and lower extremities in mid-

19  April 2003.  Although plaintiff had restricted range of motion and some pain and tenderness, there were no

20  deformities, motor strength, tone and bulk were normal, gait was unremarkable, and sensation was intact.

21  Tr. 113-14.  He could heal and toe walk without difficulty as well, and was assessed with "predominantly

22  musculoskeletal" low back pain, with a possible "minor radicular component." Tr. 114.

23       Plaintiff also was treated by Connie Walker, a physician's assistant, from late January 2003, to mid-

24  July 2003.  At no time during that period, however, did plaintiff appear to be in any acute distress. Tr. 108,

25  110, 116-21, 123-27.  Again, although plaintiff did report some tenderness in his lower back, no obvious

26  abnormalities were found, and his examination findings were fairly unremarkable. Id.  While Ms. Walker did

27  assess plaintiff with "[b]ack pain with intermittent radiculopathy" and a "gait disturbance requiring a cane"

28  in late March 2003, "[n]o formal physical" examination was performed at the time. Tr. 116.  Indeed, it was

1   noted that plaintiff "[h]ad been doing some roof work" in early July 2003. Tr. 108.

2        The non-examining consulting physician in the record found plaintiff to be capable of performing at

3   essentially the light level of exertion, although he also limited plaintiff to occasional climbing, stooping,

4   kneeling, crouching, and crawling, and stated that he should avoid concentrated exposure to hazards and

5   vibrations. Tr. 138-42.  Significantly, the non-examining physician noted that while it was reported that

6   plaintiff was carrying a cane in March 2003, he was not observed using it, nor did it appear to have been

7   prescribed by any physician in the record. Tr. 139.

8        Lastly, plaintiff argues the ALJ should have investigated the statement he provided on his request for

9   review of the hearing decision that he was "[h]aving [a]dditional problems with seizures w[h]ich my Dr. is

10  tryin[g] [to] [f]ind out why." Tr. 6.  First, needless to say, this request for review was filed after the ALJ

11  already had issued his decision.  Further, nothing in the record indicates plaintiff had reported or been found

12  to have experienced any type of seizures, let alone any significant work-related impairment relating to such

13  seizures.  As such, although in theory further inquiry by the ALJ or the Appeals Council could have

14  produced some medical evidence of additional impairments, neither was under any duty to do so.

15  II.    The ALJ Properly Assessed Plaintiff's Credibility

16       Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

17  639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination.  Allen, 749

18  F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is

19  based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

20  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

21  as that determination is supported by substantial evidence.  Tonapetyan, 242 F.3d at 1148.

22       To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

23  disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

24  what testimony is not credible and what evidence undermines the claimant's complaints."  Lester, 81 F.3d at

25  834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is

26  malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

27  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  O'Donnell v.

28  Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

1    In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

2    evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

3    testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

4    also may consider a claimant's work record and observations of physicians and other third parties regarding

5    the nature, onset, duration, and frequency of symptoms. Id.

6    The ALJ discounted plaintiff's credibility in part because of a lack of medical evidence in the record

7    to show that his alleged shoulder injury caused any significant limitations in his ability to do basic work

8    activities. Tr. 14.  A determination that a claimant's complaints are "inconsistent with clinical observations"

9    can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294,

10   1297 (9th Cir. 1998).  Although plaintiff was seen by his treating physician's assistant in early July 2003 for

11   complaints of right shoulder pain, it was noted that he was "slowly improving" on ibuprofen, and that he

12   had "almost normal range of motion and strength." Tr. 108.  Plaintiff also was found to have no reaching,

13   handling or other manipulative limitations. Tr. 140.  Thus, the ALJ did not err in discounting plaintiff's

14   allegation of a disabling shoulder impairment.

15   The ALJ also discounted plaintiff's credibility for the following reasons:

16   Despite the claimant's allegations of not being able to sit, stand, or walk for more than
     ten minutes, and his alleged inability to lift any weight at all, the claimant reported to the
17   emergency room in July that he was doing some work on his roof. Ex. 4F.2.  Moreover,
     in April 2003, the claimant reported to his neurologist that his back pain was "not severe
18   enough" to warrant a lumbar epidural steroid injection. Ex. 4F.8.

19   Tr. 15.  Plaintiff argues the ALJ did not adequately address each of the subjective complaints he mentioned

20   in the Social Security forms he completed.  However, a credibility determination is not rendered invalid

21   merely because the ALJ does not address every allegation regarding pain and symptoms a claimant makes,

22   as long as that determination is supported by substantial evidence in the record, as it is here for the reasons

23   discussed above and below. Tonapetyan, 242 F.3d at 1148.

24   Plaintiff further argues the ALJ's reliance on the early July 2003 notation in the medical evidence

25   that he had been "doing some roof work" is not sufficient, because that notation provided no information

26   regarding the extent of his work effort at that time. Tr. 108.  Plaintiff, however, misses the point.  While it is

27   true that the notation provides no such information, the fact that he can get up on the roof and do any work

28   at all, when he is alleging not being able to sit, stand and walk for more than ten minutes and being unable

     to lift any weight, is indicative of a lack of credibility.  Thus, the ALJ did not err in discounting plaintiff's

REPORT AND RECOMMENDATION
Page - 7

1 credibility for this reason as well.

2 Plaintiff also argues the ALJ erred in relying on the statement he made in mid-April 2003, that his

3 back pain was "not severe enough" to warrant an epidural injection, asserting that this was his own basis for

4 rejecting it, and not that of the examining physician, who thought he "would be a good candidate" for the

5 injection. Tr. 114. Again, however, plaintiff misses the point. His allegation of inability to work due to

6 severe disabling pain is inconsistent with his prior statement that he did not feel his back pain warranted the

7 treatment recommended by his physician. See Smolen, 80 F.3d at 1284 (ALJ may consider claimant's prior

8 inconsistent statements concerning symptoms as evidence of lack of credibility). Accordingly, here too the

9 ALJ did not err in discounting plaintiff's credibility for this reason.

10 III.    The ALJ Did Not Err in Assessing Plaintiff's Residual Functional Capacity

11 To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

12 sequential evaluation process. 20 C.F.R. § 404.1520. If a disability determination "cannot be made on the

13 basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's

14 "functional limitations and restrictions" and assess his or her "remaining capacities for work-related

15 activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional

16 capacity assessment is used at step four to determine whether he or she can do his or her past relevant

17 work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity

18 thus is what the claimant "can still do despite his or her limitations." Id.

19 A claimant's residual functional capacity is the maximum amount of work the claimant is able to

20 perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work

21 must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those

22 limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a

23 claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

24 related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

25 medical or other evidence." Id. at *7.

26 The ALJ assessed plaintiff with the following residual functional capacity:

27 The claimant has the following residual functional capacity: (1) to lift and/or carry 20
pounds occasionally, and 10 pounds frequently; (2) to stand and/or walk for a total of

28 six hours in an eight hour workday; (3) to sit intermittently up to two hours in an eight
hour workday; (4) to climb ramps, stairs, ladders, ropes, or scaffolds occasionally; (5) to

REPORT AND RECOMMENDATION
Page - 8

stoop, kneel, crouch, or crawl occasionally; (6) balance frequently; and (7) to push/pull with no limitations; and (8) should avoid concentrated exposure to vibration and hazards such as machinery or heights.

Tr. 17.  Plaintiff argues this assessment does not properly account for all of his limitations, in light of the ALJ's failure to specify which limitations were not credible.  As discussed above, however, the ALJ did not err in discounting plaintiff's credibility regarding his pain and other symptoms.  Also as discussed above, the medical evidence in the record does not support plaintiff's allegations that his impairments are in fact disabling.  As such, the ALJ did not err in assessing his residual functional capacity.

CONCLUSION

Based on the foregoing discussion, the court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 23, 2005**, as noted in the caption.

DATED this 31st day of August, 2005.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 9